1    WO

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                        **DISTRICT OF ARIZONA**

8    Timothy Coleman,                        )
                                             )        CV 08-98 TUC DCB
9                    Plaintiff,              )
                                             )
10   v.                                      )
                                             )        **ORDER**
11   City of Tucson, a body politic,         )
                                             )
12                   Defendants.             )
                                             )

13
          The Court grants in part and denies in part the Defendant's Motion to Dismiss.  The
14
     Defendant shall file its Answer, and a case management scheduling conference shall be set
15
     accordingly.
16
                                      **Introduction**
17
          Timothy Coleman ("Plaintiff") was an employee of the City of Tucson
18
     ("Defendant") from December 2, 1991 to January 25, 2007.  During his employment,
19
     Plaintiff was diagnosed with various medical and psychological conditions that resulted in
20
     extended absences from work.  Plaintiff informed Defendant that he was disabled.  As a
21
     result of his disability, Plaintiff was incapable of meeting the demands of his position, and
22
     he sought reasonable accommodations.  Plaintiff asserts that Defendant failed to provide
23
     these accommodations and that he suffered adverse employment actions because of his
24
     disability, including being forced to take medical retirement.
25
          Plaintiff filed his Complaint on February 5, 2008, alleging discriminatory
26
     employment practices.  Plaintiff seeks relief under the Americans with Disabilities Act, the
27
     Arizona Civil Rights Act, 42 U.S.C. § 1983, and right of privacy provisions under the Health
28

1    Insurance Portability and Accountability Act.  He also claims that Defendant retaliated

2    against him when he complained that he was being discriminated against based on his

3    disability. Plaintiff seeks money damages, injunctive and other equitable relief.

4            The Defendant asks the Court to dismiss the case, pursuant to Rule 12(b)(6), because

5    the Complaint fails to state a claim upon which relief may be granted.

6                                        **Standard of Review**

7            The Supreme Court has explained that to survive a motion to dismiss for failure to

8    state a claim upon which relief can be granted, "factual allegations must be enough to raise

9    a right to relief above the speculative level, on the assumption that all the allegations in the

10   complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,

11   1965 (2007) (citations and internal quotations omitted). "While a complaint attacked by a

12   Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

13   obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

14   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

15   at 1964 (citations and internal quotations omitted). "[O]nce a claim has been stated

16   adequately, it may be supported by showing any set of facts consistent with the allegations

17   in the complaint." *Id*. at 1968 (abrogating a literal reading of *Conley*: "A complaint should

18   not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

19   can prove no set of facts in support of his claim which would entitle him to relief.")

20           Under Rule 12(b)(6), all factual allegations are taken as true and construed in the

21   light most favorable to the nonmoving party, *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500,

22   1504 (9th Cir.1994), and all reasonable inferences are to be drawn in favor of that party as

23   well. *Jacobsen v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir.1997). Dismissal is

24   appropriate if the facts alleged do not state a claim that is "plausible on its own face."

25   *Twombly*, 127 S. Ct. at 1973.  Plaintiff must allege facts which plausibly support his claims;

26   it is not enough if the facts are merely consistent with his claims.  *Id*. at 1959.  The Supreme

27

28                                              2

1  Court has found this reflects Rule 8(a)(2)'s threshold requirement that the "plain statement"

2  possess enough heft to "sho[w] that the pleader is entitled to relief." *Id*.

3  **Discussion**

4  **I.  Americans with Disabilities Act (ADA) Claim**

5  Plaintiff has set forth sufficient facts to support a prima facie claim of discrimination

6  under the ADA, and the motion to dismiss is denied. To qualify for relief under the ADA,

7  plaintiff must show that: (1) he is a disabled person within the meaning of the statute; (2) he

8  is qualified, with or without reasonable accommodation, to perform essential functions of the

9  job he holds or seeks; and (3) he suffered an adverse employment action because of his

10  disability. 42 U.S.C.A. § 12101 et seq.  Defendant does not dispute that the Plaintiff has a

11  disability.

12  **A. Qualified, with or without Reasonable Accommodation**

13  A disabled person is "qualified," for ADA purposes, if the individual can perform the

14  essential functions of an employment position, with or without reasonable accommodation.

15  42 U.S.C. § 12111(8).  "Essential functions" refer to the "fundamental job duties of the

16  employment position the individual with a disability holds or desires." It does not "include

17  the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be

18  considered "essential" for various reasons. *See id.* § 1630.2(n)(2)(i)-(iii). The statute provides

19  that "consideration shall be given to the employer's judgment as to what functions of the job

20  are essential…" 42 U.S.C. § 12111(8).

21  Plaintiff bears the burden of proving that he is "qualified." *Hutton v. Elf Atochem*

22  *North America, Inc.,* 273 F.3d 884, 892 (9th Cir.2001). This is a two part inquiry; Plaintiff

23  must show either that he can perform the job's essential functions without reasonable

24  accommodation, or that he can do so with reasonable accommodation. *See Kaplan v. City of*

25  *North Las Vegas,* 323 F.3d 1226, 1231 (9th Cir.2003).  In the latter instance, the plaintiff

26  must allege the existence of a reasonable accommodation that would permit him to perform

27

28  3

1    the essential functions of his position.  *U.S. Airways v. Barnett*, 535 U.S. 391, 401, 122 S.Ct.

2    1516 (2002).  If the suggested accommodation is reasonable on its face, the burden shifts to

3    the defendant to show that it is unreasonable on the facts presented.  *Id.* at 402.

4          A reasonable accommodation may include job restructuring, part-time or modified

5    work schedules, and reassignment.  42 U.S.C. § 12111(9).  The ADA does not require an

6    employer to modify an essential function of an existing position in order to accommodate a

7    disabled employee. *Martin v. Kansas,* 190 F.3d 1120, 1133 (10th Cir.2001) *overruled on*

8    *other grounds, Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 373-74 (2001).

9    While an employer need not create a new position for a disabled employee, the employer

10   must consider the employee for a vacant position for which he is qualified.  This mandatory

11   reassignment of disabled employees as a reasonable accommodation only applies under the

12   following limited circumstance: 1) the employee becomes unable to perform the essential

13   function of the job even with reasonable accommodations and 2) there exists, or soon will

14   be, a vacant position which the employee is qualified to perform. *Ransom v. Ariz. Bd. of*

15   *Regents*, 983 F.Supp. 895, 902 (D.Ariz.1997).

16         Plaintiff alleged the following facts.  Plaintiff's position often required him to work

17   6 to 7 days per week for as much as 70 hours per week.  (Complaint at 5, ¶43).  Plaintiff

18   supervised six people.  Plaintiff informed Defendant that he was disabled as early as 2003.

19   (Complaint at 4, ¶28). On January 12 and April 2, 2006, the Defendant reclassified his

20   position, increasing his responsibilities, which resulted in "unattainable expectations,"

21   causing Plaintiff mental anguish and stress.  (Complaint at 6, ¶44-45).

22         On or about July 28, 2006, Plaintiff met with the Department of Human Resources,

23   and it was recommended and agreed that Plaintiff would apply for and receive from

24   Defendant an ADA Accommodation. (Complaint at 8, ¶70-71).  On or about August 5, 2006,

25   Defendant received an ADA Reasonable Accommodation Request Form from Plaintiff in

26   which he attached the Health Care Certification from Dr. Westin.  (Complaint at 10, ¶86).

27

28

1   Plaintiff requested that Defendant transfer him to another position to relieve him from

2   working as a supervisor as an accommodation for his disability.  (Complaint at 10, ¶85).

3   Dr. Westin recommended that Plaintiff work no more than 40 hours per week, that his

4   projects be limited to no more than three projects running simultaneously and that he be

5   allowed to vary his work day.  (Complaint at 10, ¶88).  Dr. Westin also stated that Plaintiff

6   should not be required to supervise others. (Complaint at 10, ¶89).  Dr. Westin further opined

7   that Plaintiff was "substantially limited in thinking/concentrating, learning and interacting

8   with others."  He had a "low ability to concentrate, remember, or follow through resulting

9   in tasks not being completed or started; Plaintiff's depression and limitations made learning

10  difficult.  (Complaint at 9, ¶81-83).

11  Plaintiff did not want to consider medical retirement.  (Complaint at 8, ¶68).  Plaintiff

12  was waiting to be placed in a position which accommodated his disability.  (Complaint at 11,

13  ¶103).  Defendant required Plaintiff to interview for such positions, (Complaint at 11, ¶104),

14  and he was not reassigned to a new position.  (Complaint at 12, ¶107).

15  Defendant submits the Plaintiff admitted he was "totally disabled" when he took

16  disability retirement and, thereby, admitted he was not qualified for employment.  Defendant

17  argues that it was not required to provide Plaintiff a new position under the ADA, and it

18  accommodated him by allowing him to apply and interview for a new position.

19  The disputed material fact of whether or not Plaintiff was "totally disabled" does not

20  warrant dismissal of Plaintiff's Complaint under Rule 12(b)(6) for failing to state a claim.

21  Fed. R. Civ. P. 12(b)(6).  To survive the motion to dismiss, the Plaintiff only needs to allege

22  sufficient facts creating a genuine issue as to whether he was qualified for employment, with

23  or without a reasonable accommodation.  He has alleged facts to support his claim that he

24  was qualified for employment with an accommodation.

25  In a case where the employee is unable to perform the essential functions of his

26  current job, but is qualified for an alternative position, reassignment is warranted as a

27

28                                          5

1  reasonable accommodation.   Plaintiff claimed he was unable to perform his position,

2  requested reassignment, alternative employment assignments were available, but Defendant

3  did not reassign him to such a position.   Instead, the Defendant only  allowed him to

4  interview for positions of accommodation, which did not result in a reassignment.

5          The key question is whether Plaintiff was qualified to perform the essential functions

6  of such a reassignment.  While Plaintiff fails to provide insight as to the specific duties of the

7  new positions he sought, or specifically allege that the open positions accommodated his

8  disability, the Defendant's challenge also lacks the same specificity.

9          The Defendant could not work in excess of 40 hours per week, not supervise others,

10  and not have more than three ongoing projects at a time.  His ability to learn new things was

11  limited.   On its face, a request to accomodate these limitations seems reasonable.   It is

12  undisputed that the Defendant was aware of these  limitations and allowed him to interview

13  for available positions of employment.   This is enough to support his claim that he was

14  qualified for reassignment to open positions of employment.  If not, he would not have been

15  interviewed for them.   It is undisputed that he was not reassigned to any of the positions.

16  Plaintiff has stated a claim that the Defendant failed to accommodate his disability by not

17  reassigning him to another position.

18          The Court rejects the Defendant's argument that it accommodated the Plaintiff's

19  disability by allowing him to interview for available positions.   This Court will follow

20  *Ransom v. Ariz. Bd. of Regents*, 983 F.Supp. 895 (D.Ariz.1997), where the court held that an

21  employer may be required to assign a disabled employee to a new position under certain

22  circumstances.  The court in *Ransom* held that an employer's policy to make reassignments

23  through competitive hiring prevents the reassignment of employees with disabilities to vacant

24  positions for which they are qualified and discriminates against qualified individuals with

25  disabilities.  Like the court in *Ransom*, this court believes such an accommodation policy

26

27

28                                                        6

1    results in no accommodation at all.  *Id.* at 902 (citing *Wood v. County of Alameda*, 1995 WL

2    705139 *14 ((N.D. Cal. 1995).

3           Defendant relies on *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) to argue that

4    it was not legally required to change its rules or give the Plaintiff a preference over more

5    qualified applicants in order to provide a reasonable accommodation.  (Motion at 8-9.)

6    *Barnett* dealt with circumstances where an accommodation conflicts with seniority rules.

7    Ordinarily, this will be an unreasonable accommodation, *Barnett*, 535 U.S. at 403-404,

8    because of the importance of seniority to employee-management relations, *id.* at 401-405.

9    Nevertheless, the Supreme Court held that an employee is still entitled to present evidence

10   of special circumstances that makes the exception to the seniority rule reasonable under

11   particular facts, *id.* at 405-406.  The employee might show, for example, that the employer

12   has retained the right to change the system unilaterally, exercised the right fairly frequently,

13   thereby reducing employee expectation that the system would be followed and making the

14   requested accommodation reasonable.  *Id.* at 405. Alternatively, the system might contain

15   exceptions that would make one further exception for a disability accommodation reasonable.

16   *Id.  Barnett* does not support the Defendant's Motion to Dismiss; there is no evidence the

17   Plaintiff was denied accommodation because of a seniority system.

18   **B. Adverse Employment Action**

19          Under the ADA, Plaintiff must show that he suffered an adverse employment action

20   because of his disability. 42 U.S.C.A. § 12101 *et seq*.  Plaintiff alleges that he was "forced"

21   into disability retirement. In support of this assertion, Plaintiff has alleged the following: (1)

22   On July 28, 2006 Plaintiff's doctor provided Defendant with Health Provider Certification

23   stating Plaintiff's impairment as Major Depression that was most likely permanent; (2)

24   around this same time, Defendant was considering reasonable accommodations for Plaintiff;

25   (3) no accommodation was provided; (4) Plaintiff was told his medical leave exceeded

26

27

28                                              7

1   FMLA allowances and he was subject to termination; (5) Plaintiff had no choice but to take
2   medical retirement.

3      Defendant argues it only informed the Plaintiff he was about to exceed the permitted
4   amount of medical leave.  From February 2006 to February 2007, the Plaintiff worked on a
5   part-time basis for approximately one week in May. Defendant argues that it is not prohibited
6   from terminating an employee who has exhausted his leave under the Family Medical Leave
7   Act (FMLA) and that receiving disability retirement benefits is not adverse to the employee's
8   interests.

9      Here, however, it was adverse.  Plaintiff alleges he was on medical leave because he
10  was unable to perform the essential functions of his job, he was awaiting reassignment to
11  another position as a reasonable accommodation for his disability, Defendant's failure to
12  reassign him to an open position had the direct result of forcing him to take additional
13  medical leave.  Consequently, the employer's action/inaction caused the FMLA clock to
14  continue running, allowing the employer to then, upon expiration of the FMLA leave,
15  terminate the employee, or use the threat of looming termination as leverage to "encourage"
16  his disability retirement.

17     Assuming all facts alleged in the Complaint are true, Plaintiff suffered an adverse
18  action as a result of his disability: Defendant's failure to reassign Plaintiff forced him to use
19  his FMLA leave and be subject to termination.  The avenue he chose post-termination was
20  disability retirement. The adverse action was his "constructive discharge," not his disability
21  retirement.  Plaintiff alleges facts to support a prima facie claim of discrimination under the
22  ADA.  The motion to dismiss the ADA claim is denied.

23     **II.    Arizona Civil rights Act (ACRA)**

24     ACRA is modeled after and virtually identical to the ADA.  *Fallar v. Compuware*
25  *Corporation*, 202 F. Supp. 2d 1067, 1081 n. 9 (Ariz. 2002).  Frequently, courts combine the
26  analysis of the two statutes.  *Id.*, *see also*, *Kyles v. Contractors/Engineers Supply, Inc.*, 190

27

28                                              8

1  Ariz. 403, 405 (Ariz. App.1997) (explaining that employment discrimination claims under

2  state law follow Federal Title VII precedent).

3      It is an unlawful employment practice for any employer to discriminate against any

4  individual because of the individual's disability, if the disabled individual is qualified; it is

5  unlawful to fail or refuse to reasonably accommodate the individual's disability. A.R.S. § 41-

6  1401 et. seq.  A "Reasonable accommodation" may include job restructuring, part-time or

7  modified work schedules, or reassignment to a vacant position.  *Id.*

8      An employer may be required to assign a disabled employee to a new position under

9  certain circumstances. *Ransom v. Ariz. Bd. of Regents*, 983 F.Supp. 895 (D.Ariz.1997)

10  (holding Defendants' policy that reassignments must be made through competitive hiring

11  prevents the reassignment of employees with disabilities to vacant positions for which they

12  are qualified and discriminates against qualified individuals with disabilities, in violation of

13  the ACRA.).  Because Plaintiff's Complaint survives under the ADA, it survives under

14  ACRA.

15      **III.    Retaliation claim**

16      To establish a prima facie case of retaliation under the ADA, an employee must show

17  the following: 1)  he engaged in a protected activity; 2) suffered an adverse employment

18  action; and 3) there was a causal link between the two.  *Brown v. City of Tucson*, 336 F.3d

19  1181, 1187 (9th Cir. 2003); *see also Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)

20  (holding the same in respect to Title VII employment law cases).  The EEOC has interpreted

21  "adverse employment action" to mean "any adverse treatment that is based on a retaliatory

22  motive and is reasonably likely to deter the charging party or others from engaging in

23  protected activity." *Id.* (citing EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008

24  (1998)).

25      Plaintiff has alleged two acts in support of his claim that Defendant retaliated against

26  him for engaging in a protected activity.  He has alleged that his complaints of discrimination

27

28                                          9

1    and requests for reasonable accommodation were followed by two "reclassifications" of his

2    position with increased burdens and responsibilities and refusal to reassign him to another

3    position, which forced him to take disability retirement.   Defendant argues the

4    reclassifications did not create additional burdens and responsibilities because Plaintiff was

5    already performing these duties.  It merely reflected the work he was actually performing.

6         The Court finds that the Plaintiff engaged in the protected activity of informing the

7    Defendant that he was disabled and that he had disability related limitations that prevented

8    him from performing essential functions of his job.  Thereafter, Defendant reclassified his

9    position, which solidified his inability to perform the tasks and responsibilities and made

10   reassignment to a new position his only means of accommodation.  Defendant then refused

11   to reassign him to a new position until his medical leave expired under the FMLA, causing

12   him to be subject to termination and forcing him to take disability retirement.  Plaintiff

13   alleges a prima facie case of retaliation.[1]

14

15        [1]The Court rejects Defendant's argument that the only actionable events that occurred
16   in the 300 day time frame prior to the filing of Plaintiff's EEOC claim are limited to his one
     week of part time work in May, 2006 because he was on medical leave the remainder of time.
17   (Reply at 2-3.)  As early as 2003, Plaintiff informed Defendant that he was disabled due to
18   depression, and by August and October 2006, his disability diagnosis was changed to
     Atypical Bipolar Disorder.  In January and April of 2006, the Defendant reclassified his
19   position over Plaintiff's objections that the job was too stressful and burdensome.  In April,
20   Plaintiff requested three alternative accommodations, including return to his position with
     fewer hours and responsibilities or reassignment to a new position with fewer hours and
21   responsibilities.
         In March, Plaintiff had been placed on medical leave because of back surgery, but he
22   was released to return to work on a part-time basis in April, which he did for one week in
23   May. When Plaintiff was unable to perform his job on a part-time basis, he was again placed
     on medical leave.  On June 7, 2006, he was released from medical leave related to his back
24   surgery to return to work full duty.  Thereafter, Plaintiff was on medical leave related to his
25   Atypical Bipolar Disorder because Defendant did not reassign him to a position
     accommodating his disability. Instead of providing an accommodation, in January, 2007, the
26   Defendant informed him that his FMLA was exhausted and he would be terminated. Plaintiff
27   took disability retirement and filed his EEOC claim.  (Complaint at 19-133.)

28                                             10

**IV.     42 U.S.C. §1983**

Title 42 section 1983 of the United States Code (§1983) provides a cause of action for the deprivation of any rights, privileges secured by the Constitution and laws; it allows the injured party to bring a proceeding for relief from the opposing party.  Plaintiff rests this claim on Defendant's alleged ADA violations.  Defendant argues that because the ADA provides a comprehensive enforcement mechanism, it precludes any corollary action based on §1983, when it is based on the same facts.  (Motion at 15 (citing *Americans with Disabilities Practice and Compliance Manual*, 7:49; *see also: Thompson v. City of Arlington, Tex.*, 838 F. Supp. 1137, 1149 (N.E. Tex., 1993)).

Plaintiff's § 1983 is dismissed, but not for the reason stated by the Defendant.  To impose liability under 42 U.S.C. § 1983 upon Defendant City of Tucson, Plaintiff must demonstrate the existence of a particular official city policy or established custom and that the policy or custom caused him to be subjected to a deprivation of a constitutional right. *Oklahoma City v. Tuttle*, 471 U.S. 808, 829-30 (1985) (Justice Brennan, concurring); *See also, Monell v. New York City Department of Social Services*, 436 U.S. 658, 691, 694 (1978); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675 (9th Cir. 1984).

Plaintiff makes no allegations in the Complaint regarding a particular policy or custom of the City of Tucson.  The Defendant, however, in its Reply suggests that it followed standard personnel procedures.  (Reply at 6.)  As alleged in the Complaint, the City of Tucson is not a proper Defendant under § 1983, and count 5 is dismissed without prejudice to it being added should the evidence, upon development, support it.

/////

/////

---

The first reclassification of Plaintiff's position was prior to April, but the second reclassification was in April and Defendant's failure to accommodate the Plaintiff extended throughout the 300 days prior to the filing of the EEOC claim.  The Complaint states a jurisdictional basis for Plaintiff's claims.

11

1
**V.     Other Claims: HIPAA and Title II**

2   Plaintiff alleges that Defendant invaded his privacy by not properly securing his

3   medical information in violation of Health Insurance Portability and Accountability Act

4   (HIPAA) and the ADA.  HIPAA itself provides no private right of action. *Webb v. Smart*

5   *Document Solutions*, LLC., 499 F.3d 1078, 1081 (Cal.2007).  To the extent that Defendant

6   violated ADA regulations, such evidence may be relevant to prove Plaintiff's ADA claim.

7   Dismissal of Plaintiff's HIPAA claim does not reflect this Court's position regarding

8   discovery or admissibility of evidence that Defendant violated ADA regulations related to

9   Plaintiff's right of privacy in his medical records.

10   Title II of the ADA does not apply to employment discrimination.  *Zimmerman v.*

11   *Oregon Dept. of Justice*, 170 F.3d 1169, 1173 (9th Cr. 1999).

12   **Conclusion**

13   The Court dismisses Plaintiff's claims under Title II of the ADA, 42 U.S.C. §

14   1983, and HIPAA.

15   **Accordingly**,

16   **IT IS ORDERED** that Defendant's Motion to Dismiss (document 9) is

17   GRANTED in part as to counts 2, 5 and 6 and DENIED in all other parts.

18   DATED this 4th day of December, 2008.

19

20

21

22                                                      David C. Bury
23                                               United States District Judge

24

25

26

27

28                                                        12